[Doc. No. 37]

THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| **Klavdya Bezglasnaya,** : | |
| : | |
| Plaintiff, : | |
| : | |
| v. : | Civil No. 11-564 (JS) |
| : | |
| **Trump Entertainment** : | |
| **Resorts, Inc., et al.,** : | |
| : | |
| Defendants. : | |
| _____: | |

**MEMORANDUM OPINION**

This matter is before the Court on defendant Trump Taj Mahal Associates, LLC d/b/a Trump Taj Mahal Casino Resort's (hereinafter "defendant") "Motion for Summary Judgment and/or in the Alternative, to Bar Plaintiff's Expert, John Posusney, from Testifying at Trial" [Doc. No. 37]. The Court received plaintiff's response [Doc. No. 40] and defendant's reply [Doc. No. 44]. The Court exercises its discretion to decide defendant's motion without oral argument. See Fed. R. Civ. P. 78; L. Civ. R. 78.1. For the reasons to be discussed, defendant's motion is DENIED.[1]

---

[1] Much of plaintiff's opposition relies upon the opinions of its expert, John Posusney, P.E. In brief summary, Posusney opines that plaintiff's accident "would have been prevented if the tile floor was replaced with carpet." See Posusney Engineering Evaluation at 12, Plaintiff's Brief in Opposition to Defendants' Motion for Summary Judgment ("Plaintiff's Brief"), Ex. J [Doc. No. 40-11]. Posusney also opines that defendant's failure to create a written safety policy and implement safety procedures were substantial factors in causing plaintiff's accident. Id. at 11-12. For various reasons defendant argues Posusney should be barred from testifying at

1

I.  Background

On August 22, 2009, at approximately 8:30 to 9:00 p.m., plaintiff was injured after she slipped and fell on a tile floor at defendant's "Sultan's Feast" restaurant.[2] Sultan's Feast is a self-service buffet-style restaurant located within the Trump Taj Mahal Casino Resort in Atlantic City, New Jersey. Before entering defendant's restaurant patrons pay a cashier. Patrons are then seated in the restaurant by a hostess. Jerome Samuel Deposition Transcript ("Samuel Dep.") 44:17-24, Plaintiff's Brief, Ex. E [Doc. No. 40-6]; Jean Claude Vil Deposition Transcript ("Vil Dep.") 26:8-18, Plaintiff's Brief, Ex. F [Doc. No. 40-7]. After being seated patrons walk to the buffet area to serve themselves food and then carry their plates back to a table. Samuel Dep 38:19-25; Vil Dep. 26:8-18; 47:21-48:3. When plaintiff fell a hostess was leading her to a table through an area of the restaurant where patrons carried plates of food from the buffet. Defendant's Statement of Undisputed Facts ¶ 4 [Doc. No. 37-1]. Plaintiff testified at her deposition that she was following the hostess, moved three to four feet after the hostess came up to her, and then she fell. Plaintiff Deposition Transcript ("Pltf. Dep.") 16:22-17:1; 17:18-23, Plaintiff's

---

trial. As discussed herein, the Court finds that defendant's motion should be denied even without reliance on Posusney's opinions. Therefore, there is no need for the Court to address in this Opinion whether Posusney's opinions should be excluded at trial.

[2] Defendant alleges the tile was marble. Brief in Support of Defendant's Motion for Summary Judgment ("Defendant's Brief") at 5 [Doc. No. 37-1].

2

Brief, Ex. B [Doc. No. 40-3]. Rostislav Sigalova, plaintiff's son-in-law, testified plaintiff's fall looked like she was "ice skating." Rostislav Sigalova Deposition Transcript ("Rostislav Dep.") 9:18-10:4, Plaintiff's Brief, Ex. D [Doc. No. 40-5]. Defendant's employees were aware patrons carried food through this area and that food may fall from patrons' plates. Vil Dep. 48:10-49:7; Leigh D. Pardee Deposition Transcript ("Pardee Dep.") 51:6-16, Plaintiff's Brief, Ex. K [Doc. No. 40-12]. Further, employees were aware they were to watch for spills and foreign substances on the floor. Vil Dep. 35:12-36:22; Gloria J. Scott Deposition Transcript ("Scott Dep.") 41:10-16, Plaintiff's Brief, Ex. G [Doc. No. 40-8]; Pardee Dep. 47:8-12. The fall occurred in an area observed by the hostesses while they waited to seat patrons. Pardee Dep. 59:21-60:10.

Plaintiff alleges in her complaint that an oily substance on the restaurant floor caused her fall. Amended Complaint ¶ 15 [Doc. No. 9]. Although plaintiff did not see what caused her to fall she testified it was something slippery. Pltf. Dep. 18:5-19:5. Plaintiff's hostess did not warn her about any foreign substance on the floor. Id. 16:22-17:2.

Immediately after plaintiff fell her daughter touched the floor where the fall occurred and felt an oily substance on her hand. Ruslana Sigalova Deposition Transcript ("Sigalova Dep.") 11:7-12:18; 22:23-23:2, Plaintiff's Brief, Ex. C [Doc. No. 40-

3

4]. Sigalova testified, "I touched a tile on the floor. And it was an oily substance. It had a shimmer. I actually had it on my hand." Id. 11:13-15. Sigalova added, "[i]t was visible on my hand." Id. 12:18. In addition, she testified that the oily substance was in the area that plaintiff would have walked through before her fall. Id. at 22:20-23:2. Sigalova showed the substance on her hand to her husband, Rostislav Sigalova. Rostislav Dep. 10:15-11:5. Defendant's injury report prepared after plaintiff fell did not state whether oil was present but merely stated that there was no water in the area. See "Guest Injury/Mishap Report", Plaintiff's Brief, Ex. L [Doc. No. 40-13]. The security guard who completed the report testified that he has no recollection of the accident. Samuel Dep. 91:10-20. Other employees working at the restaurant when the injury occurred also have no specific recollection of the incident. See Vil Dep. 55:4-18; Scott Dep. 27:2-15; Manuela D. Brodeck Deposition Transcript ("Brodeck Dep.") 18:10-19:18, Plaintiff's Brief, Ex. N [Doc. No. 40-15]. After her fall plaintiff fractured her hip. Plaintiff filed suit against defendant on January 31, 2011 alleging one count of common-law negligence.

   II.  Jurisdiction

   The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds

$75,000. Further, the parties consent to the jurisdiction of this Court to decide defendant's motion pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.

III. Legal Standard

A court should grant summary judgment when the record demonstrates that "there is no genuine issue to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986). A genuine issue of material fact exists if the evidence is such that a reasonable jury could find for the non-moving party on an issue affecting the outcome of the litigation. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). To determine if a material fact exists a court must view the evidence in a light most favorable to the non-moving party. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Id. at 255.

The moving party has the initial burden to demonstrate the absence of a genuine issue of material fact. See Celotex, 477 U.S. at 323. The burden then shifts to the non-moving party to identify specific facts that contradict those of the moving party. See Anderson, 477 U.S. at 256. If the non-moving party comes forward with "specific facts showing that there is a genuine issue for trial," such that a jury may return a verdict

5

in his favor, summary judgment must be denied. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

   IV. Discussion

   Because the Court hears this case pursuant to diversity jurisdiction it must apply state substantive law to plaintiff's claim. See Gasperini v. Ctr. for Humanities, Inc., 518 U.S. 415, 427 (1996).

   A. Plaintiff's Negligence Claim

   Pursuant to New Jersey law business owners have a duty to maintain safe premises for business invitees. See Stelluti v. Casapenn Enters., LLC, 203 N.J. 286, 307 (2010). Owners must "guard against any dangerous conditions on [the] property that the owner either knows about or should have discovered." Hopkins v. Fox & Lazo Realtors, 132 N.J. 426, 434 (1993). The parties do not disagree that plaintiff was a business invitee. See Brief in Support of Defendant's Motion for Summary Judgment ("Defendant's Brief") at 4 [Doc. No. 37-1]; Plaintiff's Brief at 16 [Doc. No. 40]. Defendant acknowledges it had a duty to the plaintiff "to exercise ordinary or reasonable care to keep the premises free from any unreasonable risk of harm and to warn plaintiff of any unreasonably dangerous conditions known or discoverable . . . with the exercise of reasonable care." Defendant's Brief at 4. The parties, however, disagree as to

6

whether a dangerous condition existed and whether defendant breached its duty of care by failing to protect plaintiff from the alleged dangerous condition.

Defendant argues plaintiff has not presented evidence that a dangerous condition existed. Id. at 5. The Court disagrees. Immediately after the fall plaintiff's daughter touched the floor and got an oily substance on her hand. Sigalova Dep. 11:13-12:18; 22:23-23:2. Sigalova's husband saw the substance on her hand. Rostislav Dep. 10:15-22. Defendant has not presented evidence to rebut the testimony that an oily substance was present. Since the security guard who completed the post-accident injury report has no recollection of the accident he has no reason to dispute that plaintiff slipped on an oily substance. Samuel Dep. 91:10-25; see also "Guest Injury/Mishap Report." Other employees working when the injury occurred also have no specific recollection of the incident. See Vil Dep. 55:4-18; Scott Dep. 27:2-25; Brodeck Dep. 18:10-18. It is true that defendant's injury report states that no water was present. However, the report is silent as to whether an oily substance was present. Even if the report is interpreted to mean that the floor was dry or no foreign substance was present, which in and of itself presents a fact issue, the jury must resolve the fact dispute between plaintiff's and defendant's evidence regarding whether a foreign substance was present. As a result, the Court

7

concludes there is sufficient evidence for a jury to find there was an oily substance on the floor of defendant's restaurant and that this created a dangerous condition.

Defendant also argues summary judgment should be granted because even if a dangerous condition existed there are no facts to show it had actual or constructive notice of the condition. See Defendant's Brief at 6-7. Plaintiff argues that whether defendant had notice is a fact question for the jury. See Plaintiff's Brief at 27-28.

Plaintiff has the burden to prove defendant had actual or constructive knowledge of the alleged dangerous condition. See Nisivoccia v. Glass Garden, Inc., 175 N.J. 559, 563 (2003). Plaintiff does not argue defendant had actual notice of a foreign substance on its tile floor. Instead, plaintiff argues defendant had constructive knowledge. See Plaintiff's Brief at 27. A defendant has constructive knowledge "if the condition existed for such a length of time that the business owner should have known of its presence." Bozza v. Vornado Inc., 42 N.J. 355, 359 (1964). A plaintiff need not prove exactly how long the dangerous condition existed if the facts otherwise demonstrate that a defendant had constructive notice. See McCracken v. Target Corp., No. 09-4816(RBK/JS), 2011 WL 1466075, at *4 (D.N.J. Apr. 18, 2011). Further, if a plaintiff presents material facts that suggest defendant should have been aware of

8

the dangerous condition, summary judgment should be denied because whether a defendant in fact had constructive notice is a question for the jury. See Monaco v. Hartz Mountain Corp., 178 N.J. 401, 419 (2004). Here the Court finds plaintiff presents a fact question as to whether defendant had notice of a dangerous condition. First, a jury may find that defendant's employees should have seen the condition since they were working nearby. After all there is evidence that the fall occurred in an area observed by the hostesses. Pardee Dep. 59:10-60:10. Further, a jury could find that the hostess who was leading plaintiff to her table should have seen the condition since she either walked over or close to the area where plaintiff fell.

The Court does not accept defendant's argument that "[i]f Plaintiff cannot demonstrate a time frame as to how long the substance was present, it is patently unreasonable to hold that Defendant Trump Taj Mahal had any notice, actual or constructive, of some alleged dangerous condition." Defendant's Brief at 6-7. The decision in McCracken, supra is instructive. In McCracken the plaintiff slipped and fell in a high traffic area of a Target store. Immediately after she fell, while still on the floor, plaintiff noticed a yellow-tinted liquid that allegedly caused her fall. Plaintiff, however, did not know how the spill occurred or how long the liquid was on the floor before she fell. Id. at 1. The court denied Target's motion

9

for summary judgment in part because it found that a reasonable jury could conclude Target had constructive knowledge of the spill that allegedly caused plaintiff's fall. See id. at *4. The court concluded that Target should have monitored the area more vigilantly because it "should have known that frequent spills [were] particularly likely . . . because of the constant traffic, bottlenecking customers, and the likelihood that customers would stop at the shopping carts and baskets and unload personal items or merchandise into carriers." Id.

Similarly, in this case the jury could find that plaintiff's fall occurred in an area where employees knew spills were foreseeable and they should have closely monitored the area for spilled food. Plaintiff fell in an area of defendant's restaurant where patrons walked back to their tables with plates of food from the buffet. Vil Dep. 48:10-49:7. Defendant's employees were aware patrons carried food through this area and that they should watch for spills and foreign substances on the floor. Vil Dep. 48:10-49:7; Scott Dep. 41:10-16; Pardee Dep. 47:8-12; 51:6-16. Further, the fall occurred in an area observed by the hostesses while they waited to seat patrons. Pardee Dep. 59:10-60:10. As a result, plaintiff presents sufficient facts for a jury to find that defendant should have closely monitored the area where plaintiff fell, and that if the area was closely monitored it would have been aware of the

10

foreign substance that allegedly caused plaintiff's fall.  This is especially true here since defendant's hostess was leading plaintiff to a table when plaintiff's fall occurred.  A jury could find that a foreign substance was present on the floor and that if the hostess exercised reasonable care she would have either cleaned the substance or diverted plaintiff around it before plaintiff fell.

   A. "Mode-of-Operation" Negligence Claim

   There is an alternative ground upon which to deny defendant's motion.  Plaintiff argues the "mode-of-operation" rule should be applied.  This rule provides that a plaintiff is relieved of showing actual or constructive notice of a dangerous condition "when a substantial risk of injury is inherent in a business operation's method of doing business." Nisivoccia, 175 N.J. at 564.  The mode-of-operation rule is applicable when "loose items that are reasonably likely to fall to the ground during customer or employee handling would create a dangerous condition." Id. at 565.  If the rule is applied a plaintiff is entitled to an inference of negligence sufficient to survive summary judgment. Id.  The burden then shifts to the defendant to show it did "all that a reasonably prudent man would do in the light of the risk of injury [the] operation entailed." Id. at 564 (quoting Wollerman v. Grand Union Stores, Inc., 47 N.J. 426, 429 (1966)).

11

Plaintiff's injury occurred at a self-service buffet where patrons walked from the buffet area to their tables with plates of food. Giving plaintiff the benefit of all inferences, as the Court must do in this context, the Court infers that the fall occurred reasonably close to the food trays on defendant's buffet. Due to the nature of defendant's self-service buffet a jury could find that it is likely that loose items or "oily substances" could fall to the ground during customer handling, which would create a dangerous condition. See id. at 564; Bozza, 42 N.J. at 780-81. As a result, there is a fact question whether the mode-of-operation rule is applicable.

Defendant argues the mode-of-operation rule should be narrowly tailored and does not apply here. Defendant argues because plaintiff fell "a distance from where the actual food was being served" the mode-of-operation rule does not apply. See Reply to Plaintiff's Opposition ("Defendant's Reply") at 3 [Doc. No. 44]. Defendant construes the rule too narrowly. In Nisivoccia, supra, the plaintiff slipped and fell when she stepped on a grape about three feet from the entry of a grocery store checkout aisle. After she fell plaintiff saw "at least five other grapes within a three-foot diameter around her" and no other grape was stepped on. Nisivoccia, 175 N.J. at 562. The court applied the mode-of-operation rule because as patrons unloaded groceries from the cart to the checkout counter it was

12

"foreseeable [] that loose [items] would fall to the ground near the checkout area, creating a dangerous condition for an unsuspecting customer walking in that area." Nisivoccia, 175 N.J. at 565.  Further, in Valentin v. Toy R Us, Inc. plaintiff slipped and fell on a jelly-like substance that spilled in a store aisle.  No. L-2205-06, 2010 WL 3075749, at *1 (N.J. App. Div. July 15, 2010).  Although liquid products were not sold in the aisle where plaintiff fell the court still applied the mode-of-operation rule.  Id. at *2-3.  Similarly, even if the Court assumes that plaintiff did not fall immediately in front of the buffet, a jury could find that the injury occurred in an area where patrons frequently walked with plates of food.[3]  It was, therefore, foreseeable that food could fall from a plate other than immediately in front of the buffet.

Defendant argues this case is distinguishable from cases that applied the mode-of-operation rule.  Defendant argues this case does not involve multiple loose items packaged in bags and handled in a way that is conducive to spills.  Defendant's Reply at 4.  Defendant also argues there is no indication that its

---

[3] Defendant argues the mode-of-operation rule would apply "if the incident occurred close to where the food is being served.  However, when there is a distance, such as involved here, from the buffet it would be unfair to find the mode-of-operation theory applicable."  Defendant's Reply at 3.  However, defendant provides no precise evidence as to how close to the buffet plaintiff fell.  Defendant cites to the photographs attached to its motion [Ex. A, D-1, D-2], but the Court is unable to determine merely by looking at the photos how close or far plaintiff fell from defendant's food trays.  Defendant also does not identify how close is close enough to the buffet for the mode-of-operation rule to apply.  This bespeaks a fact question for the jury to decide.

floor was dirty. Id. at 2. The Court concludes, however, that a jury could find that food at defendant's buffet was handled in a manner conducive to items falling to the floor, which creates a dangerous condition. Further, whether defendant's floor was dirty is not determinative. See Valentin, 2010 WL 3075749, at *2-3 (applying mode-of-operation rule because the nature of defendant's self-service store could cause hazardous conditions). As a result, the Court finds that the mode-of-operation rule may be applicable.

Since the Court finds that the mode-of-operation rule may apply and that plaintiff is entitled to an inference of negligence, the burden shifts to defendant to show that it took reasonable steps to protect against the harm created by its operation. See Bozza, 42 N.J. at 360. In its motion defendant provides some but not substantial evidence regarding the steps it took to keep its restaurant free from dangerous conditions. Employees testified that they were instructed to watch for and clean up spills if they occurred. See Scott Dep. 41:10-16; Pardee Dep. 47:8-12. Defendant, however, not only fails to provide specific information regarding its safety procedures, but it also did not address the actual procedures used on the day of plaintiff's accident. Further, "the question of the adequacy of the [business's] efforts to exercise due care is one for the jury." Gabriel v. Safeway, Inc., No. 10-2256 (JBS/JS),

14

2011 WL 5864033, at *9 (D.N.J. Nov. 21, 2011). As a result, if the mode-of-operation rule applies it is a fact question whether defendant can rebut the inference of negligence.

   B. Motion to Bar

   As mentioned (see infra n. 1), defendant seeks to bar plaintiff's expert, John Posusney, from testifying at trial because he presents alleged "net opinions." See Defendant's Brief at 7-9. Since the Court finds that defendant's motion for summary judgment should be denied even without considering Posusney's opinions, the Court will not address defendant's disqualification argument in this Opinion. If defendant seeks to disqualify Posusney from testifying at trial defendant is directed to file a separate motion in limine. Defendant's motion should address the Federal Rules of Evidence rather than the New Jersey Evidence Rules cited in its summary judgment brief.

   C. Conclusion

   For all the foregoing reasons the Court denies defendant's motion for summary judgment. An appropriate Order follows.


                              /s/ Joel Schneider
                              JOEL SCHNEIDER
                              United States Magistrate Judge

Dated:  March 4, 2013

15